UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-24668-CIV-LENARD/O'SULLIVAN

DEBORAH REED,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendant.

_____/

## ORDER

THIS MATTER comes before the Court on the Plaintiff's Motion for Sanctions for Spoliation of Evidence and Supporting Memorandum of Law (DE# 57, 9/3/20).

## BACKGROUND

On April 12, 2019, Deborah Reed (hereinafter "plaintiff" or "Ms. Reed") was a cruise ship passenger onboard a vessel operated by defendant Royal Caribbean Cruises, Ltd. (hereinafter "defendant" or "RCCL"). See Second Amended Complaint for Damages and Demand for Trial by Jury (DE# 35 at ¶¶ 11-12, 5/26/20) (hereinafter "SAC"); Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint (DE# 37 at ¶¶ 11-12, 6/5/20). The plaintiff alleges that:

> 13. On or about April 12, 2019, Plaintiff participated in a RCCL-organized dance party. During the dance party, besides a[ ] RCCL DJ playing 70's music, the RCCL Cruise Director staff [was] teach[ing] passengers "The Hustle" line dance.
>
> 14. As Plaintiff participated in the RCCL organized dance party, a fellow intoxicated male passenger, JOHN DOE, approached Plaintiff. JOHN DOE was not known to Plaintiff and was not one of her travelling companions.

> 15. Plaintiff initially consented to dancing with JOHN DOE, but Plaintiff did not consent to any touching between the two. Nonetheless, JOHN DOE grabbed Plaintiff's hand and despite her pleas that he not twirl her, JOHN DOE refused to comply with Plaintiff's requests. Suddenly, . . . JOHN DOE spun Plaintiff and forcefully released her causing Plaintiff to fall and land on the marble floor. As a result of the fall, Plaintiff suffered traumatic injuries that included, but [were] not limited to, a fractured wrist which required surgery.

SAC at ¶¶ 13-15.[1]

Following the incident, the plaintiff provided both a written statement (DE# 57-1) and an oral statement to RCCL staff.[2] See Declaration of Deborah Kay Reed (DE# 57-2 at ¶ 6, 9/3/20) (hereinafter "Plaintiff's Decl."). In the written statement, the plaintiff described the incident as follows: "some man grabbed me [and] twirled me. . . . I was about to walk away [and] he twirled me [and] I fell." Guest Injury Statement (DE# 57-1 at 2, 9/3/20). According to the plaintiff, RCCL staff obtained the plaintiff's permission to record her oral statement. Plaintiff's Decl. at ¶ 6. In her oral statement, the plaintiff told RCCL staff that John Doe was intoxicated. Id. at ¶ 7.

On May 15, 2019, approximately one month after the incident, the plaintiff's counsel sent a certified letter of representation to the defendant. See Exhibit 4 (DE# 57-4, 9/3/20). The letter advised the defendant of the plaintiff's intent to file a lawsuit and asked that the defendant preserve certain evidence:

> We request that you maintain and preserve the area and materials involved in the incident so that we may inspect the same. Do not change

---

[1] The defendant states that John Doe "has since been identified and disclosed to Plaintiff." Response at 1.

[2] The plaintiff's declaration uses the terms "RCCL security/safety officers," "RCCL staff members" and "RCCL security/safety staff members" interchangeably. See Plaintiff's Decl. at ¶¶ 6-7, 9. To avoid confusion, the undersigned will use the term "RCCL staff."

2

or alter the area and materials involved in the incident. Be advised that any such alterations may constitute spoliation of evidence, which will necessitate appropriate legal action.

**We likewise request that you preserve any video records (including, but not limited to, any and all CCTV footage of our client taken at any and all times during the entire cruise, and CCTV footage of the area where the incident occurred, and where alcohol was served to the intoxicated passenger who may have been involved in the incident, at least one hour prior through one hour afterwards)**, photographs, accident/incident reports, and any and all other records produced by your cruise line as a result of, or relevant to, the incident. We also request that you keep records and contact information of any and all individuals who were involved in any way with the incident.

Id. (emphasis added).[3]

On September 3, 2020, the plaintiff filed the instant motion seeking spoliation sanctions over the defendant's failure to preserve more than approximately six minutes of the CCTV footage of the incident and the body camera footage of the plaintiff's oral statement concerning the incident. See Plaintiff's Motion for Sanctions for Spoliation of Evidence and Supporting Memorandum of Law (DE# 57 at 4-5, 9/3/20) (hereinafter "Motion"). The defendant filed a response in opposition on September 17, 2020. See Defendant's Response to Plaintiff's Motion for Sanctions for Spoliation of Evidence (DE# 64, 9/17/20) (hereinafter "Response"). The plaintiff filed her reply on September

---

[3] The defendant has filed a declaration attesting that:

> The CCTV cameras on Royal Caribbean's ships have 24-hour monitoring. If CCTV footage is not specifically saved, it is taped over due to storage capabilities based on the 24-hour monitoring. **The footage of Ms. Reed's incident would have been taped over well before Plaintiff's counsel's letter of May 15, 2019** requesting Royal Caribbean preserve at least one hour prior and one-hour subsequent [to] Plaintiff's incident.

Declaration of Amanda Campos (DE# 64-3 at ¶11, 9/17/20) (hereinafter "Campos' Decl.") (emphasis added).

3

22, 2020. See Plaintiff's Reply in Support of Her Motion for Sanctions for Spoliation of Evidence and Supporting Memorandum of Law (DE# 65, 9/22/20) (hereinafter "Reply").

On September 22, 2020, the plaintiff sent an email to the Court (and opposing counsel) providing two videos of the approximately six minutes of the CCTV footage which was preserved.

This matter is ripe for adjudication.

## **STANDARD OF REVIEW**

The parties agree that Rule 37(e) applies here. Motion at 5; Response at 2-3. Rule 37(e) governs the failure to preserve electronically stored information ("ESI") and states as follows:

> **(e) Failure to Preserve Electronically Stored Information**. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > **(A)** presume that the lost information was unfavorable to the party;
> > >
> > > **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
> > >
> > > **(C)** dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

"The rule 'does not place a burden of proving or disproving prejudice on one

party or the other.'" Williford v. Carnival Corp., No. 17-21992-CIV, 2019 WL 2269155, at *6 (S.D. Fla. May 28, 2019) (citing Fed. R. Civ. P. 37(e) advisory committee's notes (2015)). Nonetheless, some "courts have concluded that the party accused of spoliating evidence, not the party moving for spoliation sanctions, bears the burden of showing the lack of prejudice." Coward v. Forestar Realty, Inc., No. 4:15-CV-0245-HLM, 2017 WL 8948347, at *8 (N.D. Ga. Nov. 30, 2017).

"Rule 37(e) significantly limits a court's discretion to impose sanctions for ESI spoliations." Williford, 2019 WL 2269155, at *5. The Court may only impose sanctions under Rule 37(e) if four requirements are met: "(1) the information sought constitutes ESI; (2) the ESI should have been preserved in anticipation of litigation; (3) the ESI is lost because a party failed to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery." Title Capital Mgmt., LLC v. Progress Residential, LLC, No. 16-21882-CV, 2017 WL 5953428, at *3 (S.D. Fla. Sept. 29, 2017) (citing Fed. R. Civ. P. 37(e)).[4]

"If the answer to any of these . . . inquiries is 'no,' then the Court need proceed no further in its analysis under Rule 37(e), and a motion for spoliation sanctions or

---

[4] Some cases group or number the requirements of Rule 37(e) differently. See, e.g., In re Abilify (Aripiprazole) Prod. Liab. Litig., No. 3:16-MD-2734, 2018 WL 4856767, at *2 (N.D. Fla. Oct. 5, 2018) (listing the four requirements of Rule 37(e) as follows "First, the ESI should have been preserved in the anticipation or conduct of the litigation. Second, the ESI is lost or destroyed. Third, the loss of the ESI is due to the party's failure to take reasonable steps to preserve the ESI. Last, the ESI cannot be restored or replaced through additional discovery."); Living Color Enters., Inc. v. New Era Aquaculture, Ltd., No. 14-CV-62216, 2016 WL 1105297, at *4 (S.D. Fla. Mar. 22, 2016) (describing the requirements of Rule 37(e) as three requirements because it considered the question of whether the spoliated evidence was ESI to be a threshold issue). However, the requirements of Rule 37(e) are essentially the same.

5

curative measures must be denied. If instead the answer to all . . . questions is 'yes,' then the Court must proceed with its analysis of the (e)(1) and (e)(2)" categories of relief. Chi Nguyen v. Costco Wholesale Corp., No. 9:19-CV-80393, 2020 WL 413898, at *2 (S.D. Fla. Jan. 27, 2020) (citation and some internal quotation marks omitted).

Rule 37(e) "has two categories of relief: those in subsection (1) and the more-consequential ones in subsection (2). The sanctions available in subsection (2) require bad faith (i.e., the 'intent to deprive')." Williford, 2019 WL 2269155, at *5. Both categories of relief require a showing of prejudice. Id. at *12.

## ANALYSIS

**A.    Spoliated Evidence**

**(1)    Incomplete CCTV Footage**

The plaintiff attests that she observed John Doe's erratic behavior approximately ten to 15 minutes[5] prior to the incident:

> 4. [The plaintiff] had observed [John Doe] approximately ten to fifteen minutes before he accosted [the plaintiff], but [she] assumed that RCCL was also aware of his **unruly, erratic, intoxicated, and dangerous behavior**, and [she] assumed that RCCL had security ready that would have protected [the plaintiff] if [John Doe] started to accost [her]."
>
> 5. [The plaintiff] observed [John Doe] **stumbling, not keeping his balance well, and not keeping proper distance with his fellow passengers**.

Plaintiff's Decl. at ¶¶ 4-5 (emphasis added).

---

[5] In a different paragraph of her declaration, the plaintiff attests that John Doe was behaving erratically approximately "five to fifteen minutes before accosting [her]." Plaintiff's Decl. at ¶10 (attesting that the plaintiff "believe[d] that the additional CCTV footage that RCCL's cameras captured showed that [John Doe] was in a state of visible intoxication, and was exhibiting unruly, erratic, and dangerous behavior at least five to fifteen minutes before accosting [the plaintiff]").

6

The defendant preserved approximately six minutes of CCTV footage of the subject incident, "approximately three and a half minutes before, and two and a half minutes after" the plaintiff's fall. Motion at 3.

The plaintiff argues that the defendant "had a duty to at least preserve a minimum of five minutes of CCTV footage before Ms. Reed's incident and five minutes after." Motion at 7. The plaintiff asserts that the defendant's failure to preserve more than approximately six minutes of CCTV footage warrants sanctions because the missing footage "would have clearly show[n] John Doe in a dangerous and intoxicated state" and would have "clearly show[n] that RCCL was on notice of his danger to Ms. Reed." Id. at 2.

**(2)   Allegedly Missing Body Camera Footage**

The plaintiff attests that following the incident, the plaintiff provided both a written statement (DE# 57-1) and an oral statement to RCCL staff. See Plaintiff's Decl. at ¶ 6. According to the plaintiff, RCCL staff obtained the plaintiff's permission to record her oral statement. Id. In her oral statement, the plaintiff told RCCL staff that John Doe was intoxicated. Id. at ¶ 7.

RCCL staff also obtained an oral statement from the plaintiff's travel companion, Tracey Powell. See Plaintiff's Decl. at ¶ 9. Ms. Powell, who had been near the plaintiff when the incident occurred, also told RCCL staff that John Doe was "in an intoxicated state before he accosted [the plaintiff]." Id. at ¶¶ 8-9.

The defendant does not address the missing body camera footage in its Response. However, the plaintiff has filed an email from the defendant which asserts

that no recording of the plaintiff's oral statement was made. Exhibit 3, Email dated 8/20/2020 (DE# 57-3 at 1, 9/3/20) (asserting that "there was never any body camera footage of the plaintiff's statement after the subject incident.").

The plaintiff argues that the "body camera footage of [the plaintiff's] oral report . . . would have made it clear that she had believed John Doe was intoxicated long before deciding to file suit." Motion at 5.

## B. Rule 37(e) Requirements

As noted above, the Court must find that four requirements are met before it may grant relief under Rule 37(e): "(1) the information sought constitutes ESI; (2) the ESI should have been preserved in anticipation of litigation; (3) the ESI is lost because a party failed to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery." Title Capital Mgmt., LLC, 2017 WL 5953428, at *3. The undersigned will address each requirement below.

### (1) Whether the Information Sought Constitutes ESI

The parties do not dispute that the CCTV footage constitutes ESI. Motion at 7; Response at 3. In Sosa v. Carnival Corp., this Court found that CCTV footage was ESI governed by Rule 37(e). No. 18-20957, 2018 WL 6335178, at *11-15 (S.D. Fla. Dec. 4, 2018). Although the defendant does not address the body camera footage, the undersigned also finds that body camera footage constitutes ESI under the reasoning in Sosa.

The first requirement of Rule 37(e) has been met.

8

**(2) Whether the ESI Should Have Been Preserved in Anticipation of Litigation**

"[The] issue [of whether the ESI should have been preserved] can also be framed with another question: was the party under a duty to preserve?" Incardone v. Royal Carribean Cruises, Ltd., No. 16-20924-CIV, 2019 WL 3779194, at *20 (S.D. Fla. Aug. 12, 2019). "Once a party reasonably anticipates litigation, it has an obligation to make a conscientious effort to preserve electronically stored information that would be relevant to the dispute." Chi Nguyen, 2020 WL 413898, at *2 (S.D. Fla. Jan. 27, 2020) (citation omitted).

Here, the defendant anticipated litigation as of the date of the incident because it has asserted the work product doctrine over a guest incident report prepared on the day of the incident or shortly thereafter. See Exhibit 7 (DE# 57-7 at 1, 9/3/20). In Hoover v. NCL (BAHAMAS) Ltd., the court determined that the defendant "anticipated litigation as of the [date of the] incident" because "it [had] asserted work product protection over incident reports generated the same day and photographs (at least one of which appears to have been taken the same day)." No. 19-22906-CIV, 2020 WL 4505634, at *3 (S.D. Fla. Aug. 5, 2020).

At issue in the instant case, however, is not whether the defendant had a duty to preserve CCTV footage of the incident. The defendant in fact preserved approximately six minutes of CCTV footage. At issue is whether the defendant had a duty to preserve more than the approximately six minutes it did preserve.

The plaintiff argues that "RCCL cannot dispute that it anticipated that Ms. Reed's incident might result in litigation, and that it therefore had a duty to at least preserve a

9

minimum of five minutes of CCTV footage before Ms. Reed's incident and five minutes after, as well as to preserve the body camera footage of Ms. Reed's oral report." Motion at 7.

The plaintiff asserts that the defendant had a policy of preserving a minimum amount of CCTV footage based on the deposition testimony of the defendant's corporate representative, Amanda Campos.[6] In another case, Ms. Campos testified that preserving video surveillance of "five minutes before and five minutes after" an incident was "basic investigation." Motion at 3 (citing Deposition of Amanda Campos, Exhibit 5 (DE# 57-5 at 127, 9/3/20)).

The plaintiff argues that "the admission of RCCL's corporate representative that RCCL had a policy to record at least five minutes before, and five minutes after an incident . . . clearly shows that RCCL knew, or at least should have known, that this minimum amount of footage was important in plaintiffs' personal injury cases." Reply at 2-3.

The defendant counters that it preserved a sufficient amount of CCTV footage concerning the incident:

> Royal Caribbean preserved video based upon the contentions made by Plaintiff herself at the time of her incident, and those assertions made by eyewitnesses. (See Plaintiff's Guest Injury Statement and Witness Statement, attached hereto as Exhibits 1 and 2 respectively). Plaintiff, herself, indicated she lost her balance while dancing. (Ex. 1). In other words, CCTV was saved sufficient to identify the nature and cause of Plaintiff's incident based upon the information, assertions, and evidence available to the security department at that time.

---

[6] Ms. Campos is the Director of Guest Claims and Litigation for Royal Caribbean Cruises. Campos' Decl. at ¶ 1.

10

Response at 4.

The defendant filed a declaration from Ms. Campos which states, in part, that the defendant does not have a policy of preserving a specific amount of CCTV footage:

> 8. At my deposition, I was asked questions about Procedure 7.05 Personal Injury Investigations. I testified to the best of my recollection regarding 7.05 but stated that "I have to review it" to be certain of specific guidelines regarding the storage of CCTV footage within the procedure.
>
> 9. I have since reviewed Procedure 7.05. The Procedure indicates that shipboard personnel should store CCTV footage of an injury; however, **it does not indicate a specific amount of video that should be preserved**. Procedure 7.05 indicates that "Footage leading up to the injury, the actual injury and any response to the injury" should be preserved.
>
> ***
>
> 12. There is nothing in Royal Caribbean's policies and procedures that requires preserving CCTV footage of one hour prior and one-hour subsequent [to] an incident. **Footage sufficient to capture the lead up to the incident, the incident, and the response to the incident is saved pursuant to Procedure 7.05**. Such a procedure was followed in this case.

Campos' Decl. at ¶¶ 8-9 (emphasis added).

"[T]he mere fact that a party had the ability to preserve more ESI does not necessarily mean that a decision to preserve less is evidence of a breach of the duty to preserve." Incardone, 2019 WL 3779194, at *22. In Incardone, the defendant preserved approximately 91 minutes of CCTV footage of a ship during a storm. Id. at *1. The plaintiffs in Incardone argued that the defendant should have preserved all 14,400 hours of CCTV footage, a position which the Court described as "illogical and impractical on its face." Id. at *22; id. at *23 (concluding that the defendant was not under an obligation to preserve all the CCTV video).

11

The Court in <u>Incardone</u> noted that "[l]itigants do not have a duty to preserve any and all evidence, but only that which is potentially relevant." 2019 WL 3779194, at *22. The Court noted that "deciding the issue of whether [the defendant] preserved a sufficient representative sample of the CCTV video is not dependent on the specific number of minutes which were preserved" but "[i]nstead, it focuses on the nature and significance and proportionality of the portions preserved." <u>Id.</u> at *23. As an example, the Court noted that had the defendant "preserved 10 hours of CCTV [footage] which focused mostly on interior walkways and did not adequately depict the decks, waves, wind and damage to the vessel" during the storm, the defendant "would have breached its duty to preserve ESI," "even though 10 hours of CCTV [footage] is substantially more than 91 minutes." <u>Id.</u>

The plaintiff asks the Court for a rule requiring the defendant to preserve at least five minutes before and five minutes after an incident. Motion at 7. However, "[t]here are no hard and fast rules establishing a specific cutoff point for how many minutes of CCTV [footage] must be preserved in order to be reasonable" because "[i]t would be difficult, if not impossible, to come up with some specific number because the reasonableness also depends on the quality and fairness of the clips." <u>Incardone</u>, 2019 WL 3779194, at *24 (noting that "[t]hree hours of clips from the early part of the storm showing modest wind and waves is probably less reasonable than 15 minutes of representative clips during the nastiest part of the storm").

Additionally, the Court cannot find that the defendant violated its own policy when it failed to preserve more than the approximately six minutes of CCTV footage. Based

12

on Ms. Campos' declaration, the undersigned finds that the defendant did not have a policy requiring it to preserve a specific amount of CCTV footage following an incident. See Campos' Decl. at ¶¶ 8-9. Notably, the plaintiff has not presented any written policy to counter Ms. Campos' declaration.

As stated in Incardone, the Court must "focus[ ] on the nature and significance and proportionality of the portions [of CCTV footage] preserved." 2019 WL 3779194, at *23. In the instant case, the plaintiff wrote in an injury statement that "some man grabbed [her and] twirled [her] . . . . [She] was about to walk away [and] he twirled [her] [and she] feel [sic]." Guest Injury Statement (DE# 57-1 at 2, 9/3/20). The plaintiff and her travel companion also orally reported to RCCL staff that John Doe was intoxicated.[7]

Here, the defendant preserved approximately six minutes of CCTV footage. These approximate six minutes captured, "approximately three and a half minutes before, and two and a half minutes after" the plaintiff's fall. Motion at 3. The Court has closely reviewed the CCTV footage that was preserved and finds it to be sufficient. The CCTV footage captures the lead-up and immediate aftermath of the plaintiff's fall. It shows the plaintiff and a male passenger dancing with each other at approximately 3:10. At approximately 3:32, the male passenger spins the plaintiff and the plaintiff falls.

While the plaintiff would have liked more than the three and a half minutes of footage preceding the incident in the hopes that it would have captured John Doe's

---

[7] Although the defendant disputes that the plaintiff's oral statement was recorded, Exhibit 3, Email dated 8/20/2020 (DE# 57-3 at 1, 9/3/20), the defendant has not presented any evidence to counter the plaintiff's assertion that she provided an oral statement. Plaintiff's Decl. at ¶ 6.

13

erratic behavior, the undersigned does not find that the defendant had a duty to preserve more CCTV footage under the circumstances of the instant case given the nature of the incident and the witnesses' descriptions of the incident, including the plaintiff oral statement that John Doe was intoxicated.

Moreover, the plaintiff's "belie[f] that the additional CCTV footage that RCCL's cameras captured [would have] show[n] that [John Doe] was in a state of visible intoxication, and was exhibiting unruly, erratic, and dangerous behavior at least five to fifteen minutes before accosting [the plaintiff],"[8] is speculative. The plaintiff attested that prior to the incident, she "observed [John Doe] stumbling, not keeping his balance well, and not keeping proper distance with his fellow passengers." Id. at ¶ 5. The undersigned notes that the CCTV footage that was preserved shows a crowded dance floor, with many passengers constantly moving around. If any one passenger were "stumbling, not keeping [his or her] balance well, and not keeping proper distance with . . . fellow passengers," it would have been difficult to tell given the number of passengers on the dance floor and their constant movement.

With respect to the CCTV footage, the second requirement of Rule 43(e) has not been met.

The plaintiff also argues that the defendant had an obligation to preserve the body camera footage of the plaintiff's oral statement. Motion at 7. The parties dispute whether a body camera recording of the plaintiff's oral statement was ever made. Ordinarily, the Court would need to hold an evidentiary hearing to resolve this factual

---

[8] Plaintiff's Decl. at ¶ 10.

dispute. However, the record here does not evidence any prejudice to the plaintiff from the allegedly missing body camera footage. Therefore, it is not necessary for the Court to resolve the factual dispute over whether body camera footage of the plaintiff's oral statement was ever taken in the first place.

The plaintiff seeks to use the body camera footage to show that the plaintiff told the defendant, shortly after the incident, that John Doe was intoxicated. See Motion at 5 (stating that "body camera footage of [the plaintiff's] oral report . . . would have made it clear that she had believed John Doe was intoxicated long before deciding to file suit"). Both the plaintiff and her travel companion, Tracey Powell, witnessed John Doe's intoxicated behavior and reported this information to RCCL staff. Assuming the Court will allow it, the plaintiff or Ms. Powell may testify at trial that they told RCCL staff on the day of the incident that they believed John Doe was intoxicated. The missing body camera footage (assuming it existed) does not prejudice the plaintiff.

If there is no prejudice to the plaintiff, "then no remedial measures may be ordered" under Rule 37(e). Williford, 2019 WL 2269155, at *12; Incardone, 2019 WL 3779194, at *25 (stating that "[p]laintiffs would still need to demonstrate prejudice in order to obtain even the milder-type sanctions available in [Rule 37(e)(1)]."). Because there is no prejudice to the plaintiff stemming from the allegedly missing body camera footage, the undersigned will not further address the allegedly missing body camera footage.

### (3) Whether the ESI was Lost Because a Party Failed to Take Reasonable Steps to Preserve It

"Rule 37(e) does not define the 'reasonable steps' necessary to preserve ESI,

15

nor does it explain what a party must show to meet its burden to establish that a party failed to take those reasonable steps." Sosa, 2019 WL 330865, at *5. Nonetheless, the Advisory Committee's Notes provide some guidance in evaluating this requirement: "'[t]he court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts; some litigants, particularly individual litigants, may be less familiar with preservation obligations than others who have considerable experience in litigation.'" Id. (quoting Fed. R. Civ. P. 37 advisory committee's notes (2015)).

The plaintiff argues that this requirement is met because "RCCL indisputably anticipated litigation, yet it inexplicably allowed usual key pieces of evidence to be destroyed, the CCTV footage of the incident, as well as body camera footage of Ms. Reed's oral report." Motion at 9. The plaintiff notes that:

> RCCL offers no reasonable explanation for why it apparently took no measures to preserve at least five minutes of CCTV footage prior to Ms. Reed's incident, and five minutes afterwards, nor does it explain why it failed to preserve any body camera footage at all, let alone the body camera footage of Ms. Reed and Ms. Powell's oral statement.

Id. at 10.

"Reasonable steps to preserve [ESI] . . . does not call for perfection." Fed. R. Civ. P. 37(e) advisory committee's notes (2015); see also Marten Transp., Ltd. v. Platform Advert., Inc., No. 14-CV-02464-JWL-TJJ, 2016 WL 492743, at *4 (D. Kan. Feb. 8, 2016) (noting that "[d]ue to the ever-increasing volume of electronically stored information and the multitude of devices that generate such information, perfection in preserving all relevant electronically stored information is often impossible."). "'[A] corporation under a duty to preserve [evidence] is not required to keep every slued of paper, every e-mail or

16

electronic document, and every backup tape'" and "'the duty to preserve evidence extends to . . . unique, relevant evidence that might be useful to the adversary.'" Chi Nguyen, 2020 WL 413898, at *3 (quoting Ala. Aircraft Indus., Inc. v. Boeing Co., 319 F.R.D. 730, 740-41 (N.D. Ala. 2017)).

The undersigned finds that the defendant preserved a reasonable amount of the CCTV footage given the plaintiff and other witnesses' descriptions of the incident, including the plaintiff's oral statement that John Doe was intoxicated. The portion of the CCTV footage that was not preserved was taped over during the normal course of operation. See Campos Decl. at ¶ 11 (attesting that "[i]f CCTV footage is not specifically saved, it is taped over due to storage capabilities based on the 24-hour monitoring.").

The third requirement of Rule 37(e) has not been met.

### (4) Whether the ESI Cannot be Restored or Replaced through Additional Discovery

In Sosa, this Court found that the fourth requirement was met where "[t]here [was] no other video available to show what the area where [the plaintiff] fell looked like at the time of her fall or whether water was on the floor" and the Court "[did] not deem deposition answers from eyewitnesses to be an adequate substitute, especially when some of the witnesses did not recall seeing anything either way." 2018 WL 6335178, at *20.

Here the parties agree that missing portions of the CCTV footage cannot be restored or replaced through additional discovery. Motion at 10; Response at 5.

The fourth requirement of Rule 37(e) has been met.

Because not all of the requirements of Rule 37(e) are present in the instant case,

the Court denies the instant Motion.

## **CONCLUSION**

Based on the foregoing, it is

ORDERED AND ADJUDGED that the Plaintiff's Motion for Sanctions for Spoliation of Evidence and Supporting Memorandum of Law (DE# 57, 9/3/20) is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida this **2nd** day of October, 2020.

_____
JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE