UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-24668-CIV-LENARD/O'SULLIVAN

DEBORAH REED,

       Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

       Defendant.

_____/

## ORDER

THIS MATTER comes before the Court on the Plaintiff's Motion for Sanctions for Spoliation of Evidence as to Body Camera Footage Admitted by Defendant to Exist and Supporting Memorandum of Law (DE# 112, 1/4/21).

## BACKGROUND

On April 12, 2019, Deborah Reed (hereinafter "plaintiff" or "Ms. Reed") was a cruise ship passenger onboard a vessel operated by defendant Royal Caribbean Cruises, Ltd. (hereinafter "defendant" or "RCCL"). See Second Amended Complaint for Damages and Demand for Trial by Jury (DE# 35 at ¶¶ 11-12, 5/26/20) (hereinafter "SAC"); Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint (DE# 37 at ¶¶ 11-12, 6/5/20). The plaintiff alleges that:

> 13. On or about April 12, 2019, Plaintiff participated in a RCCL-organized dance party. During the dance party, besides a[ ] RCCL DJ playing 70's music, the RCCL Cruise Director staff [was] teach[ing] passengers "The Hustle" line dance.
>
> 14. As Plaintiff participated in the RCCL organized dance party, a fellow intoxicated male passenger, JOHN DOE, approached Plaintiff. JOHN

> DOE was not known to Plaintiff and was not one of her travelling companions.
>
> 15. Plaintiff initially consented to dancing with JOHN DOE, but Plaintiff did not consent to any touching between the two. Nonetheless, JOHN DOE grabbed Plaintiff's hand and despite her pleas that he not twirl her, JOHN DOE refused to comply with Plaintiff's requests. Suddenly, . . . JOHN DOE spun Plaintiff and forcefully released her causing Plaintiff to fall and land on the marble floor. As a result of the fall, Plaintiff suffered traumatic injuries that included, but [were] not limited to, a fractured wrist which required surgery.

SAC at ¶¶ 13-15.[1]

On January 4, 2021, the plaintiff filed the instant motion seeking sanctions for the alleged spoliation of body camera footage of the interview of John Doe. See Plaintiff's Motion for Sanctions for Spoliation of Evidence as to Body Camera Footage Admitted by Defendant to Exist and Supporting Memorandum of Law (DE# 112, 1/4/21) (hereinafter "Motion").[2] The defendant filed its response in opposition on January 19, 2021. See Defendant's Response Plaintiff's Motion for Sanctions for Spoliation of Evidence [D.E. 112] (DE# 115, 1/19/21) (hereinafter "Response"). The plaintiff filed her reply on January 26, 2021. See Plaintiff's Reply in Support of Her Motion for Sanctions

---

[1] The defendant has identified "John Doe" as Augustine Morris. Response at 1. However, consistent with the SAC and some of the parties' filings, the Court will use the name "John Doe" when referring to this individual in this Order.

[2] On September 3, 2020, the plaintiff filed a similar motion seeking spoliation sanctions over the defendant's failure to preserve more than approximately six minutes of the CCTV footage of the incident and the body camera footage of the plaintiff's oral statement concerning the incident. See Plaintiff's Motion for Sanctions for Spoliation of Evidence and Supporting Memorandum of Law (DE# 57, 9/3/20). On October 2, 2020, the undersigned issued an Order denying the motion. See Order (DE# 66, 10/2/20). The plaintiff has filed objections to the Order (DE# 66) which are pending before the District Court. See Plaintiff's Objections to the Honorable Magistrate Judge's Order [DE 66] (DE# 71, 10/9/20).

for Spoliation of Evidence and Supporting Memorandum of Law (DE# 117, 1/26/21) (hereinafter "Reply").

The undersigned set a status hearing for February 4, 2021 to address the following issues:

> (1) which side bears the burden of proof in establishing that body camera footage of John Doe's interview existed; (2) whether an evidentiary hearing is necessary to determine whether body camera footage of John Doe's interview existed and (3) what evidence the parties would be prepared to present if an evidentiary hearing is warranted.

Order Setting Telephonic Hearing (DE# 121 at 1-2, 2/1/21) (emphasis omitted). Neither party asked the Court to set an evidentiary hearing. Following the hearing, the Court provided the parties with an opportunity to supplement the record with the deposition of Amanda Campos, the defendant's Rule 30(b)(6) corporate representative. See Order (DE# 122, 2/4/21).

On February 4, 2021, the defendant cited portions of Ms. Campos' deposition in support of its argument that body camera footage of John Doe's interview at no point existed. See Notice of Filing (DE# 124, 2/4/21). On February 8, 2021, the plaintiff filed a Response to Defendant's Notice of Filing (DE# 127, 2/8/21).

This matter is ripe for adjudication.

## STANDARD OF REVIEW

The plaintiff moves for spoliation sanctions pursuant to Rule 37(e) of the Federal Rules of Civil Procedure. Motion at 1. Rule 37(e) governs the failure to preserve electronically stored information ("ESI") and states as follows:

> **(e) Failure to Preserve Electronically Stored Information**. If electronically stored information that should have been preserved in the

3

> anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>> **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>>
>> **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>
>>> **(A)** presume that the lost information was unfavorable to the party;
>>>
>>> **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
>>>
>>> **(C)** dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

## **ANALYSIS**

The plaintiff seeks spoliation sanctions against the defendant for failing to preserve the body camera footage of the interview of John Doe conducted by Charlie Electores, RCCL's Guest Security Supervisor. Motion at 2.

As a remedy for the defendant's alleged failure to preserve the body camera footage of the interview of John Doe, the plaintiff seeks the exclusion of the approximately six minutes of CCTV footage depicting the incident. The plaintiff argues that the:

> exclusion of the subject CCTV video is an appropriate remedy for Defendant's spoliation of the body camera footage of JOHN DOE's interview, which could have provided both a glimpse as to how JOHN DOE actually appeared and sounded shortly after Plaintiff's incident (i.e., whether he looked/sounded intoxicated), and which may have revealed a critical admission by JOHN DOE about the danger he posed to Plaintiff.

Id. at 4. Alternatively, the plaintiff seeks "a jury instruction allowing the jury to find that, if

4

the jury believes that Defendant negligently failed to preserve the body camera footage, the jury can presume that the body camera footage would have shown that [John Doe] demonstrated unruly, erratic, intoxicated, and dangerous behavior at the time of his interview." Reply at 4-5.

The parties dispute whether body camera footage of the interview of John Doe ever existed. The plaintiff relies solely on the deposition testimony of Charlie Electores, RCCL's Guest Security Supervisor, to support her position that there was body camera footage of the interview of John Doe. Motion at 2-3; Reply at 2. Mr. Electores testified, in part, as follows:

> Q.  The gentleman you interviewed after you identified him on the CCTV footage, when you interviewed him, **he was not in the medical center**; is that correct?
>
> A.  **Yeah, he was not in the medical facility**. He was not injured. He was not injured, so he was not in the medical facility.
>
> **Q.  Did you turn your body cam on when you interviewed him?**
>
> **A.  I don't really remember, but normally when we interview a person outside of the medical facility, then we have to switch on our body camera.**
>
> Q.  And that body cam interview footage would show what he said, how he said it, how he appeared, if he appeared intoxicated, appeared sober, or coherent or friendly or cooperative or argumentative, all that would be on that body cam footage, correct?
>
> [Counsel for the Defendant]: Form.
>
> THE WITNESS: **If it's on, then it's there**.
>
> [Counsel for the Plaintiff]:
>
> **Q.  Is there any reason why you would have turned it off when you're interviewing the witness like that outside the medical center?**
>
> [Counsel for the Defendant]: Form.

5

>THE WITNESS: If it is outside the medical facility -- hello, excuse me?
>
>[Counsel for the Plaintiff]:
>
>**Q. Is there any reason why you would have turned it off when you interviewed that man?**
>
>[Counsel for the Defendant]: Form.
>
>COURT REPORTER: I don't think he can hear you.
>
>[Counsel for the Plaintiff]:
>
>Q. Can you hear me, sir?
>
> A. Yes.
>
>**Q. Mr. Electores, is there any reason why you would have turned off your body cam --**
>
>**A. No, there's no reason. There's no reason because --**
>
>Q. So where does the body cam footage go after your shift? How is it stored, who has it, what happens to it?
>
> A. We save it in our work station, and then we keep it there just in case, for an investigation, because every day, even though when we start our duty, we set the camera, then we set everything there.

Deposition of Charlie Electores (DE# 109-1 at 22-23, 12/28/20) (emphasis added).

The defendant insists that "there was no body cam footage taken of . . . [John Doe]." Response at 2. In her Reply, the plaintiff notes that although the defendant "claims in responding to Plaintiff's motion that the body camera footage never existed, . . . it does not produce any sworn testimony to this effect." Reply at 2.

As noted above, on February 4, 2021, the undersigned held a status hearing to address several issues raised by the parties' briefs including: (1) which party had the burden of proof with respect to the existence of the body camera footage and (2) whether an evidentiary hearing was necessary to resolve the issue of whether body

6

camera footage of John Doe's interview ever existed.

At the status hearing, the defendant cited Wandner v. Am. Airlines, 79 F. Supp. 3d 1285, 1297 (S.D. Fla. 2015) in support of its argument that the plaintiff has the burden of establishing the existence of the body camera footage. Wandner states, in part, as follows:

> **As the party seeking spoliation sanctions, Wandner has the burden of proof. "[T]he party seeking [spoliation] sanctions must prove ... first, that the missing evidence existed at one time**; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense." Walter, 2010 WL 2927962, at *2 (citing Floeter, 2007 WL 486633, at *5) (emphasis added); see also Managed Care Solutions, 736 F.Supp.2d at 1322.

Id. at 1297 (emphasis added).

Although Wandner was decided before the 2015 amendments to Rule 37(e) went into effect,[3] other post-2015 amendment, ESI cases also suggest the burden remains on the movant to establish the existence of the spoliated evidence. In Wooden v. Barringer, for instance, the court ruled that:

> **Because Plaintiff ha[d] failed to prove that video evidence ever existed showing the "prolonged choking" of Plaintiff, or of Defendant Barringer falling to the ground (other than the footage included in the three videos), the Court need not apply the Rule 37(e) analysis**. Instead, the Court's Rule 37(e) analysis [would] focus on the videos of Plaintiff being escorted to medical, of Plaintiff at medical, and of other

---

[3] Wandner was decided on January 12, 2015. The 2015 amendments to the Federal Rules of Civil Procedure took effect on December 1, 2015. See Lewis v. Erfe, No. 3:17-CV-01764 (VLB), 2020 WL 4581724, at *2 (D. Conn. Aug. 10, 2020) (noting that "[i]n transmitting the proposed new Rule 37(e) to Congress in April 2015, Chief Justice Roberts included an order that 'the foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 2015, and shall govern in all proceedings in civil cases thereafter commenced, and, insofar as just and practicable, all proceedings then pending.'") (quoting 2005 U.S. Order 0017).

7

> inmates cleaning the floor in the pod after the use-of-force incident to determine whether spoliation occurred.

No. 3:16-CV-446-MCR-GRJ, 2017 WL 5140518, at *6 (N.D. Fla. Nov. 6, 2017) (emphasis added); see also Romero v. Regions Fin. Corp./Regions Bank, No. 18-22126-CV, 2019 WL 2866498, at *4 (S.D. Fla. July 3, 2019) (stating that "[t]o establish spoliation, **the moving party must show (1) that the missing evidence existed at one time**; (2) the alleged spoliator had a duty to preserve the evidence; and (3) the evidence was crucial to the movant being able to prove its prima facie case or defense.") (emphasis added); Atta v. Cisco Sys., Inc., No. 1:18-CV-1558-CC-JKL, 2020 WL 7384689, at *4 (N.D. Ga. Aug. 3, 2020), report and recommendation adopted, No. 1:18-CV-1558-CC, 2020 WL 7022450 (N.D. Ga. Nov. 30, 2020) (stating that "[g]enerally, **a party seeking spoliation sanctions must first show that (1) the missing evidence existed at one time**; (2) the defendant had an obligation to preserve it; and (3) it was crucial to the plaintiff being able to prove her case.") (emphasis added).

At the February 4, 2021 status hearing, neither party requested an evidentiary hearing. The undersigned provided the parties with an opportunity to supplement the record. See Order (DE# 122, 2/4/21). The defendant cited to portions of the deposition of Amanda Campos, the defendant's 30(b)(6) corporate representative. See Notice of Filing (DE# 124, 2/4/21). Ms. Campos testified that there was no body camera footage:

> Q. Okay. **As part of this investigation, did Mr. Electores speak to Mr. Augustine?**
>
> A. **Yes.**
>
> Q. And what did he -- strike that.
>
> **Did Mr. Electores obtain a statement, a written statement, from Mr.**

8

> **Augustine?**
>
> A. **No.** From Mr. -- from Augustine Morris, no, he did not. Morrison or Morris. I'm sorry. He did not.
>
> Q. What did the conversation that Mr. Electores have with Mr. Augustine consist of?
>
> A. He just asked him what had happened, and they just spoke about what had happened.
>
> Q. **As part of his investigation, did Mr. Electores ask Ms. Reed if she wanted to press charges against Mr. Augustine?**
>
> [Counsel for Defendant]: Form.
>
> THE WITNESS: **I don't believe so.** Because based on his investigation and based on her statement, she had stated that she pulled -- that he had pulled her hand to swing around, that caused her to fall, and they had missed some gripping or something.
>
> So there was no -- there was no indication that there was any kind of malicious intent or any kind of assault that had taken place. And she never indicated that she wanted to press any kind of charges; or in his opinion, there was no indication that this was an assault that had taken place.
>
> Q. **Was Mr. Electores equipped with body cameras at the time he conducted this investigation?**
>
> [Counsel for Defendant]: Form.
>
> THE WITNESS: There were body cameras. I'm not sure whether or not he had it on him at that time. But I know that in 2019 security had body cameras. **But there was no body cam footage taken in this incident, in part of this investigation.**

Deposition of Amanda Campos (DE# 124-1 at 4, 2/4/21)[4] (emphasis added).

The plaintiff maintains that it is unclear from Ms. Campos' testimony whether she

was referring "to body camera footage of Ms. Reed's interview, JOHN DOE's interview,

---

[4] The Court cites to the page numbers automatically assigned by the CM/ECF System which appear at the top, right-hand corner of each page.

9

or both." Response to Defendant's Notice of Filing (DE# 127 at 1, 2/8/21). The plaintiff further argues that the "Defendant should be required to submit an affidavit to clear up the evidentiary uncertainties." Id. at 2.

The Court finds that the plaintiff has not met her burden of establishing that the body camera footage of John Doe's interview ever existed. Although the defendant has not submitted competing evidence in the form of an affidavit or declaration attesting that John Doe's interview was never recorded on body camera footage, the burden of establishing that the body camera footage existed in the first place is on the plaintiff. Wooden, 2017 WL 5140518, at *6.

The only evidence proffered by the plaintiff is the deposition testimony of Mr. Electores. Mr. Electores testified that he did not remember whether he turned on his body camera to interview John Doe, "but normally when [they] interview a person outside of the medical facility, then [they] have to switch on [their] body camera." Deposition of Charlie Electores (DE# 109-1 at 22, 12/28/20). The plaintiff's argument is that because Mr. Electores was equipped with a body camera and John Doe was interviewed outside of the medical facility, then body camera footage of the interview of John Doe must have existed.

Notably, the body cameras used in the instant case were not constantly recording footage. According to Ms. Campos, security officers needed to ask permission before making a recording:

> Q.  Are security -- are security officers allowed, in their discretion, to have the body cameras on or off, or is there a set policy?
>
> A.  I believe that we have to -- **they have to ask if the person is okay with the body cam footage being on**. And typically it's only applied for

10

>   incidents that involve a kind of security issue; or other times that they believe that it would be pertinent to do so.

Deposition of Amanda Campos (DE# 124-1 at 5, 2/4/21) (emphasis added).

Thus, in order to conclude that body camera footage of the interview of John Doe must have existed, the Court would have to assume that Mr. Electores asked John Doe if Mr. Electores could record the interview and John Doe agreed to the interview being recorded[5] or Mr. Electores surreptitiously recorded John Doe during the interview. There is no record evidence to support these suppositions. Mr. Electores himself testified that he had no recollection of whether he turned on his body camera when he interviewed John Doe. Deposition of Charlie Electores (DE# 109-1 at 22, 12/28/20). The plaintiff's proffered evidence is speculative and insufficient to establish by a preponderance of the evidence[6] that body camera footage of the interview of John Doe at one point existed.

In sum, the undersigned concludes that the plaintiff has not met her initial burden of showing body camera footage of John Doe's interview ever existed. Because the burden of proof is on the movant, Wooden, 2017 WL 5140518, at *6, the Court will not require the defendant to submit an affidavit to clarify any evidentiary uncertainties. The burden of developing the record as to the existence of the body camera footage was on

---

[5] When Mr. Electores asked John Doe for a written statement, John Doe refused to provide one. See Deposition of Charlie Electores (DE# 109-1 at 47, 12/28/20) ("Q. Did the gentleman who you interviewed refuse to give you a written statement? A. That's correct.").

[6] "The burden of proof for Rule 37 sanctions is a preponderance of the evidence." Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd., No. 9:18-CV-80758, 2019 WL 7371831, at *3 (S.D. Fla. Sept. 20, 2019).

11

the plaintiff. See Samuel D. Mavoides, Plaintiff, v. Charles L. Ryan, et al., No. CV-17-04187-PHX-DWL, 2021 WL 410859, at *3 (D. Ariz. Feb. 5, 2021) (stating that "because the [available evidence was] so ambiguous, it was incumbent upon Plaintiff to use the discovery process to develop other evidence that the prison possessed, and then destroyed, video footage of the incident. Unfortunately, Plaintiff did not do so and the time to conduct discovery expired long ago. . . .The bottom line is that, without evidence that the videotape in question ever existed and was then destroyed, the Court cannot grant an adverse-inference instruction under Rule 37(e).").

Even if the plaintiff had been able to meet her burden of proof with respect to spoliation sanctions under Rule 37(e), the Court would not have been inclined to grant the type of relief sought by the plaintiff in the instant Motion.

As a remedy for the defendant's alleged failure to preserve the body camera footage of John Doe's interview, the plaintiff seeks the exclusion of the approximately six minutes of CCTV footage depicting the incident. Motion at 4. Rule 37(e)(1) specifically states that "upon finding prejudice to another party from loss of the information, [the Court] may order measures **no greater than necessary to cure the prejudice**." Fed. R. Civ. P. 37(e)(1) (emphasis added). The plaintiff's requested relief – the exclusion of the approximately six minutes of CCTV footage depicting the incident – is not reasonably related to the alleged harm caused if, indeed, there had been body camera footage of the interview of John Doe. Here, the evidence that was allegedly spoliated was the ability to observe John Doe's demeanor at the time of his interview with Mr. Electores. Any spoliation sanctions upon a successful motion would have been

12

tailored toward remedying the alleged prejudice caused by the missing body camera footage and would not have likely included the exclusion of the CCTV footage of the incident.

As an alternative, the plaintiff proposes "a jury instruction allowing the jury to find that, if the jury believes that Defendant negligently failed to preserve the body camera footage, the jury can presume that the body camera footage would have shown that the male passenger demonstrated unruly, erratic, intoxicated, and dangerous behavior at the time of his interview." Reply at 4-5. However, to date, the plaintiff has presented no evidence which would support a finding that the defendant "acted with the intent to deprive [the plaintiff] of the [body camera footage of the interview of John Doe for] use in the litigation." Fed. R. Civ. P. 37(e)(2); see also Nationwide Life Ins. Co. v. Betzer, No. 5:18-CV-39-OC-30PRL, 2019 WL 5700288, at *10 (M.D. Fla. Oct. 28, 2019) (stating that "sanctions under (e)(2) can only be imposed where there is a finding that 'the party that lost the information acted with the intent to deprive another party of the information's use in the litigation.'") (quoting Fed. R. Civ. P. 37(e), 2015 Notes of Advisory Committee); O'Berry v. Turner, No. 7:15-CV-00064-HL, 2016 WL 1700403, at *4 (M.D. Ga. Apr. 27, 2016) (noting that subsection (e)(2) "only applies if the Court finds that the party failed to preserve the data intentionally, in order to deprive the opposing party of its use in litigation.").

**CONCLUSION**

Based on the foregoing, it is

ORDERED AND ADJUDGED that the Plaintiff's Motion for Sanctions for Spoliation of Evidence as to Body Camera Footage Admitted by Defendant to Exist and Supporting Memorandum of Law (DE# 112, 1/4/21) is **DENIED**. During trial, the Court will decide if the plaintiff may examine Mr. Electores or any other witness in front of the jury regarding whether any body camera footage of the interview of John Doe ever existed. If that testimony is allowed, the jury would consider that evidence, along with all of the other evidence in the case, in making its decision.

DONE AND ORDERED in Chambers at Miami, Florida this **11th** day of February, 2021.

_____
JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE