UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-24668-CIV-LENARD/O'SULLIVAN

DEBORAH REED,

    Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES, LTD.,
A foreign corporation,

    Defendant.
_____/

**DEFENDANT'S REPLY TO PLAINTIFF'S AMENDED RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The Defendant, ROYAL CARIBBEAN, replies to Plaintiff's Amended Response to Defendant's Motion for Summary Judgment as follows:

**I.    NO DUTY TO WARN OF OPEN AND OBVIOUS CONDITION:**

Plaintiff has not adduced evidence that supports the inference that Defendant was under a duty to warn her of the general hazard claimed in her Second Amended Complaint, or that Defendant breached any such duty. Under Count II, Failure to Warn, for duty and breach, Plaintiff pled that Defendant failed to warn Plaintiff of the dangers of uninvited contact by intoxicated passengers, that passengers are encouraged to consume alcohol, and that Plaintiff would not have participated in the dance event if she had been warned of the aforementioned "dangers." (DE# 35, ¶ 43–44). The "but for" clause of Plaintiff's Second Amended Complaint is rather instructive to the instant motions.

In her Response, Plaintiff purports that "there is sufficient evidence in the record to establish that a reasonable person would not have been aware of the danger they were in while dancing with this passenger" because the passenger might have also assumed or could assume that Defendant was watching the dance floor. (DE# 126, p. 6). However, as noted above, this was

not the hazard that Plaintiff pled Defendant failed to warn her of. The hazard pled by Plaintiff was that of a general nature. The general "dangers and/or likelihood of uninvited physical contact aboard the vessel by intoxicated and/or unruly passengers, a danger which is exacerbated when passengers are encouraged to consume alcohol which results in the diminution of their inhibitions and good judgment" is an open and obvious hazard and common sense. (DE# 35, ¶ 43); *see Yusko v. NCL (Bah.) Ltd.*, 424 F. Supp. 3d 1231, 1236 (S.D. Fla, Jan. 3, 2020) ("Generally, falling while dancing with a partner is the type of danger that is open and obvious to the reasonable person."); *Krug v. Celebrity Cruises, Inc.*, No. 16-22810-CIV, 2017 U.S. Dist. LEXIS 155861, 2017 WL 4277165, at *3 (S.D. Fla. Sept. 25, 2017), aff'd, 745 F. App'x 863 (11th Cir. 2018) (tripping while running across a dancefloor is an open and obvious danger)); *Salazar v. Norwegian Cruise Line Holdings*, Ltd., 188 F. Supp. 3d 1312, 2016 U.S. Dist. LEXIS 67395, 2016 WL 2961584, at *3 (S.D. Fla. May 23, 2016) ("'Drawing from the well of human experience leads one to the realization' that liquid may be spilled on a dance floor when that dance floor is populated by intoxicated, dancing cruise ship passengers. Under these circumstances, spilled liquid on a dancefloor is 'open and obvious to any reasonably prudent person through the exercise of common sense and the ordinary use of their eyesight.'")

Plaintiff's reliance on *Carrol v. Carnival* that open and obvious hazards are "not [sic] a bar to liability for negligently maintaining premises" is misplaced because none of the claims made by Plaintiff amount to "negligently maintaining premises." *see* 955 F.3d 1260, 1268, (11th Cir. 2020); *see also* [D.E. 35]. As Plaintiff's Counts I through III do not amount to "negligently maintaining premises," the *Carrol* decision is not dispositive. Plaintiff's reliance on *Carroll* is completely misplaced as Plaintiff mischaracterizes the facts and holding of that case.

Additionally, Plaintiff's Count II must be disposed of as a matter of law pursuant to the fact that Defendant's Guest Conduct Policy had in fact warned Plaintiff against the dangers of

intoxicated persons and/or the dangers of uninvited contact prior to her voyage. *See* (Exhibit 1, RCCL Guest Policy, p. 9) ("Royal Caribbean International guests are expected to be responsible for their actions at all times, . . . , while onboard, . . . . Consuming alcohol to excess impairs one's judgment and reduces one's ability to recognize and avoid potentially dangerous situations. Guests who choose to consume alcohol must do so responsibly."); (Ex. 2, Deposition Transcript of Amanda Campos, Defendant's Corporate Representative, p. 19) ("the guest conduct policy is in the ticket contract. It is referred to on the website. Prior to boarding, guests have to accept the terms and conditions of the ticket contract."); (Ex.1, p. 7) (Inappropriate or Abusive Behavior: Inappropriate or abusive behavior is not permitted. This includes: uninvited physical contact, solicitation, harassment, vandalism, theft, violence). The hazard that Plaintiff pled Defendant failed to warn her about is addressed within Defendant's Guest Conduct Policy. Therefore, Defendant cannot be said to have failed to warn Plaintiff of these general hazards as a matter of law. There is nothing particularly maritime in nature about these alleged hazards, so Plaintiff, as an adult woman dancing with other adults in an area where alcoholic beverages are being served, did not need to be warned. If the inquiry is as to this specific "John Doe"—how would Royal Caribbean have had the requisite knowledge to warn her that this individual was potentially dangerous? Plaintiff fails to meet her burden as a matter of law that there was anything about John Doe's behavior that required Defendant to warn her about, or to intervene.

The general hazards posed by intoxicated passengers on a cruise ship, or intoxicated patrons at a night club, lounge, or bar, are open and obvious hazards any adult is aware of. Plaintiff has not adduced any evidence regarding why a reasonable person needed to be warned regarding the general hazards posed by dancing on a crowded dance floor. Plaintiff has also failed to adduce why Defendant's crew should have appreciated any danger Mr. Morris posed to

Plaintiff. There is no evidence that Mr. Morris was intoxicated or behaving in a manner which would have called for intervention prior to the subject incident.

Plaintiff has not met her burden to prove that Defendant owed her a duty to warn of the hazard pled, as it was open and obvious. Additionally, Defendant did in fact warn Plaintiff through its Guest Conduct Policy.

## II.     NO EVIDENCE OF NOTICE

### A. Count I – The evidence of record does not support that Defendant was negligent in its "supervision and/training" of its staff.

Plaintiff has not adduced evidence that Defendant negligently trained or supervised its crew, or that it failed to monitor the Hustle dance event. There is no evidence that RCCL's crew was "incompetent or unqualified." (DE# 35, ¶ 21). The evidence of record points to a finding of the contrary. As Exhibit 2 shows, Defendant has produced its "Serve Safe" policy to which the crew members must undergo to ensure that the crew members are adequately trained in identifying signs of intoxication which may need prevention. *See* (Exhibit 2, p. 14, 29). Plaintiff has not established that the Serve Safe training to which the employees present at the Centrum Dancefloor at the time of the Subject Incident undertook is/was deficient in any manner. Plaintiff has not established that the employees present at the Centrum Dancefloor at the time of the alleged Subject Incident did not undergo the Serve Safe training. Finally, Plaintiff has not proven that RCCL failed to enforce the Serve Safe policy, or that any alleged failure to do so was the proximate cause of Plaintiff's incident.

Further, Plaintiff's First Count of Negligence states that Plaintiff's incident occurred during an RCCL sponsored dance event and in conclusory fashion argues that RCCL failed to supervise said event. (DE# 35 ¶ 18-23). Plaintiff's own testimony refutes these allegations because the RCCL sponsored "Hustle" line dance occurred with no incident. (DE# 83-2, p. 63-64). Additionally, Mr. Collins and Ms. Powell also testified that the line dance instruction had

ended prior to Mr. Morris and Plaintiff's dance encounter. *See* (DE# 129-4, p. 18 ll. 12-17); (DE# 129-5, p. 12 ll. 4-25; p. 31 ll. 11-14). Mr. Collins and Ms. Powell, per Plaintiff, her travel companion on the dancefloor and her travel companion observing the dancefloor from above: the instruction had ended, the band ceased playing the Hustle and began playing different music before she ever began dancing with Mr. Morris. (DE# 83-2, p. 63-64); (DE# 129-4, p. 18 ll. 12-17); (DE# 129-5, p. 13 ll. 4-25; p. 31 ll. 11-14). Mr. Collins and Ms. Powell both testified to not noticing Mr. Morris Prior to his encounter with Plaintiff. (DE# 129-4, p. 21 ll. 2-16) ("I had not seen him prior to them dancing"); (DE# 129-5, p. 13 ll. 4-25; p. 31 ll. 11-14) ("So there was nothing to catch my eye, no . . . there was nothing that I could say stood out about anybody out there on the dance floor because I really didn't pay attention to them. I noticed him more when he crossed in front of me and grabbed her hands, then I took notice, but I mean, before that I really didn't pay attention."). How can it be said that Defendant was negligent in supervising and/or training its staff as they relate to Defendant's line dance instruction, when the line-dance instruction started and commenced without incident? Plaintiff's Response does not address why or how Defendant was negligent in its supervision and/or training of its staff. *See* (DE# 126, p. 14).

Plaintiff essentially relies on unsupported ipse dixit statements that because Defendant controlled an area, and because an accident occurred, Defendant must have breached its duty by negligently training and/or supervising its staff. Such statements are wholly insufficient. *See Lozman*, 39 F. Supp. 3d 1392, 1404 (holding the "nonmoving party may not restate allegations made in its pleadings or rely upon "self-serving conclusions, unsupported by specific facts in the record.").

Similar to the *DW* case, Plaintiff in the instant case has not "presented sufficient record evidence to defeat summary judgment on this claim." *DW v. Carnival Corp.*, 2018 U.S. Dist.

LEXIS 227001, *30. In *DW*, a minor alleged a theory of liability that Carnival "was negligent by failing to enforce its policies regarding over-service of alcohol to an underage passenger and monitoring passengers who are clearly intoxicated." *Id.* The Plaintiff ("DW") alleged that a passenger ("Trevor") had been "visibly and obviously" intoxicated when Trevor inadvertently entered DW's room and essentially spooned him (no evidence of sexual assault was found). DW did not argue that any of the Defendant's "crewmembers witnessed Trevor intoxicated person prior to the incident, but only that they should have." *See Id.* DW argued that a "jury could find that Trevor was visibly intoxicated when he boarded the ship, given the evidence that he was allegedly visibly intoxicated later when he was discovered in Plaintiff's cabin room. In addition, Plaintiff points out that Defendant classified this incident as an 'intoxicated guest incident.'" This Court was not persuaded by any of these arguments, or any "conclusory allegations" that:

> Defendant should have had security cameras in every passenger corridor and roving security teams patrolling at all times—Plaintiff has not produced any evidence to support these allegations of negligence. One can likely imagine any number of ways to more effectively protect passengers . . . . For example, each passenger could be assigned his or her own chaperone. Or armed guards could be posted at each [] access point. Or maybe the signs could have been bigger, more colorful, or included pictures . . . . That [Carnival] didn't have these things, and that one might argue these would be 'better' ways of ensuring passenger safety, does not alone lead one inexorably to the conclusion that" Carnival should be liable failing to monitor and apprehend a passenger who consumed four beers but otherwise showed no signs of intoxication in front of Carnival personnel.

*Id.* at *32 (citing *Caron v. NCL (Bahamas) Ltd.*, No. 16-23065-CIV, 2017 U.S. Dist. LEXIS 182607, 2017 WL 5135857, at *3 (S.D. Fla. Nov. 3, 2017)).

Not a single person from Plaintiff's traveling party noticed anything unusual about Mr. Morris prior to the Plaintiff's incident. Despite this, somehow Plaintiff believes Defendant's crewmember should have. Additionally, Plaintiff asserts that her sworn testimony goes further than "he was kind of loud and kind of clumsy" in that she "observed JOHN DOE stumbling, not keeping his balance well, and not keeping proper distance with his fellow passengers." (DE#

126, p. 9). However, Plaintiff's self-serving statements and conclusions, which are not supported by fact or the evidence of record are insufficient to survive motion for summary judgment. *See Lozman*, 39 F. Supp. 3d 1392, 1404. Plaintiff's attempt to analogize the instant case with *Lebron* miss the mark. While true, the drafting by Plaintiff's counsel of the declarations for Claudia Lebron and for Plaintiff do note an eerily similar window of 10-15 minutes wherein they observed an allegedly dangerous condition, the key distinction is who is proffering the evidence. In *Lebron*, the declaration regarding the 10-15 minutes did not come from the Plaintiff, Mr. Lebron who had been the one to bring forward a claim. *Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 921 (11th Cir. 2020). In the instant case, it is Plaintiff who is proffering this 10-15 minute window of observation which was not observed by any party, witness deponent, CCTV video, or otherwise any evidence of record. A Plaintiff cannot rely on their own conclusory statements and allegations to survive summary judgement, there must be record evidence of essential elements of her claims with specific evidence from the record to support such. *Lozman*, 39 F. Supp. 3d 1392, 1404. There is no evidence that Mr. Morris was "drunk" as Plaintiff's Second Amended Complaint alleges throughout. Mr. Morris' bar receipts alone provide little evidentiary value and their probative value are far outweighed by the prejudicial nature against Defendant. Not only can Plaintiff not prove that Mr. Morris even consumed any of the drinks purchased on his tab, Plaintiff cannot prove that the consumption of such made Mr. Morris intoxicated. Without more, bar receipts cannot prove that RCCL was on notice of intoxication before the alleged incident. There is no competent evidence indicating Mr. Morris was visibly intoxicated and should have been removed from the dance floor.

Plaintiff's Response makes the attenuated leap in logic that because Mr. Morris was charged drinks, he drank them all, had a propensity to drink and become intoxicated, and this gave him a propensity to be dangerous. These untethered leaps do not pass muster under the law.

"Mere notice that a passenger is intoxicated, however, may not always be sufficient to put a defendant on notice that the passenger is in serious danger." *Doe v. NCL (Bahamas) Ltd.*, 2012 U.S. Dist. LEXIS 162651, *10 (S.D. Fla. Nov. 14, 2012) (citing *Royal Caribbean Cruises*, 2011 U.S. Dist. LEXIS 146855, 2011 WL 6727959, at *4 ("It may well be that passengers often become intoxicated on cruise ships and that, in context, [a state of obvious intoxication] was insufficient to reasonably put the defendant on notice that the plaintiff was in serious danger"). Plaintiff has not adduced any record evidence of any complaints or incidents against Mr. Morris. In *DW*, Carnival had no duty to monitor a minor who had four drinks. As such, in the instant case, Defendant did not have a duty to monitor a sixty-year-old man who had six drinks in a four-hour period and did not exhibit signs of intoxication or impairment. Plaintiff's Response also claims that Defendant "should have followed its policy of refusing to serve alcoholic beverages to any guest who does not consume alcohol responsibly" without providing any sort of evidence that Mr. Morris did not consume alcohol responsibly. Plaintiff then attempts to distinguish the instant case from *Broberg* by claiming Plaintiff's unsupported testimony that Mr. Morris "appeared to be unruly and erratic" apparently provides more evidentiary value than the four plus eyewitness testimonies of witnesses who had seen Ms. Broberg prior to her unfortunate incident, photos, videos and a toxicology expert's testimony at trial. 798 Fed. Appx. at 590.

Plaintiff also argues that Ms. Powell, who testified that she had not noticed Mr. Morris prior to his encounter with Ms. Reed, somehow provides evidence of constructive notice. *Id.* As a plain watching of the CCTV video shows, Plaintiff and Mr. Morris were dancing for less than 30 to 45 seconds, with the twirling dance movement comprising about ten seconds. Plaintiff cites to Ms. Powell's statement that she smelled alcohol on Morris' breath. (DE# 126, p. 9). Plaintiff is relying on post-incident observations and testimony which concedes that Ms. Powell could not say that Mr. Morris was intoxicated and that only after coming into proximity with him could she

smell alcohol. Plaintiff's Response also refers to the way Mr. Morris was dancing with Plaintiff as some means of notice; however, it would not be reasonable under the circumstances for Defendant to intervene within 45 seconds of apparent consensual dancing on an active dancefloor. There is nothing to suggest the dancing was non-consensual, which Plaintiff must prove to establish that RCCL was on notice.

Plaintiff's Response addresses policies and procedures to attempt establish notice of a defective condition. However, this misses the mark as to the Count I of Negligence pled by Plaintiff. Plaintiff's Response does not support the allegation that Defendant allowed "inadequately trained and/or unqualified agents, servants, crewmembers, and/or employees to monitor RCCL sponsored dance parties" which created a dangerous condition. By all accounts, Defendant's staff present at the time of the Subject Incident had partaken in the "Serve Safe" and "See Something Say Something" training, to which Plaintiff has not refuted or claimed to be deficient. Additionally, as Plaintiff and her travel companions concede, the Subject Incident did not occur during the RCCL sponsored "Hustle" line dance instruction. Plaintiff has not adduced evidence for a finding that Defendant was on notice that its staff were incompetent and/or unqualified.

Plaintiff's attempt to analogize the prior incidents produced to the instant case does not hold water. Plaintiff cites to *Sorrels* for the proposition that the "substantial similarities" doctrine does not call for identical circumstances and then, in a footnote, attempts to persuade this Court that the Eleventh Circuit would have ruled differently based on dicta and speculation. See (DE# 126, n. 2). However, just as the prior incidents in *Sorrels* were not admitted into evidence, Defendant asserts that the prior incidents cited to by Plaintiff in her response are not substantially similar enough to the instant case to prove anything. 796 F.3d 1275, 1287-88 (citing *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396, 1397 n.12 (11th Cir. 1997) (explaining that "before

evidence of prior accidents or occurrences is admitted into evidence, the proponent of such evidence must show that conditions substantially similar to the occurrence cause the prior accidents")). In *Sorrels*, 22 cases of "slipping" were produced which were all deemed dissimilar due to factors such as the area wherein the slips occurred, the substance slipped on, the footwear of the passengers, and other factors such as slipping while chasing someone around the pool. 796 F.3d at 1287. Here, Plaintiff attempts to purport that there are thirty-five (35) similar instances because they all include "dancing." (DE# 97, p. 10). That does not mean the incidents are admissible or that they prove notice of a risk creating condition. 796 F.3d at 1287-88. None of the incidents Plaintiff relies on include two passengers who initially consented to dance together, occurring during and/or immediately preceding a "line dance instruction," and/or involved an intoxicated passenger. (DE# 97-4); (DE# 35 ¶ 15) ("Plaintiff initially consented to dancing with JOHN DOE").

The incidents Plaintiff mostly relies on in her response are not analogous to the instant case because of several factors: 1) the incident with Ruiping Li concerned being "pushed by other people and fell down" and does not concern allegedly intoxicated persons or initially consensual dancing; 2) the incident with Emma Ashton is distinguishable because it involved wildly overt actions by the other passenger and Ms. Ashton had asked for the patron to be removed due to his disorderly conduct 15 minutes before her incident, as opposed to the subtle "he was kind of loud, kind of clumsy" actions by Mr. Morris which were not disclosed to Defendant before the incident or at any time on the subject voyage; 3) the incident with Tysen Urry occurred on a pool deck where he was dancing on a podium and was pushed from behind into the pool; and 4) the incident with Kim O'Conner did not involve an allegedly intoxicated person and it certainly did not involve her dancing consensually with the woman who pushed her from behind. (DE# 97-4). The one incident which is most analogous to the instant case is

conveniently omitted by Plaintiff. That is the incident involving Janet Willis, wherein Ms. Willis "missed hands" with her dance partner and fell. See (DE# 97-4). That is exactly what happened in the instant case and Plaintiff's omission is curious.

Plaintiff cites to a Fifth Circuit case wherein it states "[a] defendant had more than a duty to simply promulgate these policies and procedures, it had a duty to enforce them and to properly carry them out," yet does not provide evidence that Defendant failed to properly carry out its procedures.

Any allegation by Plaintiff that Defendant has "general knowledge" is contrary to the law in the Eleventh Circuit. This argument flips maritime law on its head. The Eleventh Circuit has emphasized the import of specific notice in recent decisions. *See Malley v. Royal Caribbean Cruises Ltd.*, 713 F. App'x 905, 906-908 (11th Cir. 2017); *Taiariol v. MSC Crociere S.A.*, 677 Fed. Appx. 599, 601 (11th Cir. 2017). Evidence that the cruise line knows that passengers can generally become injured on its ships does not put it on notice of the specific risk-creating condition in a given case. *Taiariol*, at 601. Here, as in *Yusko*, "Defendant points to the absence of any accident reports, passenger comment reviews or forms, reports from inspections, or substantially similar accidents that would have put Defendant on notice of any potential safety concerns associated with participating in the Dance [event] generally or dancing with [Mr. Morris] specifically." 424 F. Supp. 3d. at 1236. The previous incidents cited to by Plaintiff in her Response do not constitute substantially similar incidents. Additionally, none of those incidents involved alleged "negligent supervision and/or training of Defendant's staff" or inferences which a reasonable fact finder could find "negligent supervision and/or training of Defendant's staff." Accordingly, Defendant respectfully request that this Court find that Plaintiff has not satisfied her burden to prove that Defendant failed to properly supervise and/or train its staff as it relates

to the hazard pled by the "Hustle" line dance instruction and grant Defendant's Motion for Summary Judgement.

### B. The evidence of record does not support inferences wherein a reasonable trier of fact could find Count III for Plaintiff.

The Eleventh Circuit has "not previously considered a maritime negligence claim based on over service of alcohol." *Broberg*, 798 Fed. Appx. at 590. The proper framing of the question in the instant case should be "whether [Defendant] was on notice that [Mr. Morris] was intoxicated to the extent that [he] was [a] danger." Id. "[A]s a prerequisite to imposing liability . . . the carrier [must] have had actual or constructive notice of the risk-creating condition." *Keefe v. Bahama Cruise Line Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (per curiam). "A cruise line's liability 'hinges on whether it knew or should have known about' the risk-creating condition." *Broberg*, 798 Fed. Appx. at 590 (citing *Keefe*, 867 F.2d at 1322). A plaintiff cannot avoid the obligation to prove actual or constructive notice by alleging that Defendant created the hazard alleged. Here, Plaintiff cannot distinguish the binding precedent rejecting this type of argument. *Pizzino v. NCL (Bahamas) Ltd.*, 709 Fed. Appx. 563 (11th Cir. 2017). The testimony which Plaintiff relies upon in her Response does not satisfy the law of the Eleventh Circuit regarding actual or constructive notice. The affidavits produced by Plaintiff amount to nothing more than self-serving statements made in attempt to distract from what the facts of the instant case were at the time of the Subject Incident and are inadequate to survive summary judgement. *See Morhardt v. Carnival Corp.*, 304 F. Supp. 3d 1290, 1297, 2017 U.S. Dist. LEXIS 220158, *13, 2017 WL 8772506 ("[b]are and self-serving allegations are inadequate to carry the burden on summary judgment.") (*citing Shuler v. Bd. of Trustees of Univ. of Alabama*, 480 F. App'x 540, 544 (11th Cir. 2012); Stewart v. Booker T. Washington Ins., 232 F.3d 844, 851 (11th Cir. 2000)); Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) (finding that "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment

motion"). Plaintiff's self-serving affidavit—to which she relies so heavily on—merely recites elements by claiming she had believed Mr. Morris was intoxicated 10-15 minutes before her incident and she thought Defendant had as well. (DE# 57-2). In her Response, Plaintiff purports that it will establish the intoxication, unruliness and erratic behavior of Mr. Morris through fact witnesses, namely, the self-serving statements made by Plaintiff. In *Broberg*, the Eleventh Circuit case concerning whether a cruise line carrier was on notice that a passenger was intoxicated enough to pose a danger (not the novel over-serving claim put forward by Plaintiff), a toxicologist was needed when assessing whether Ms. Broberg would or would not have appeared intoxicated by the amount of drinks purportedly served. 798 Fed. Appx. at 590. Plaintiff concedes that she will not be producing a toxicologist and will rely on her eyewitness report that he was "stumbling, not keeping his balance well, and not keeping proper distance with his fellow passengers" "kind of loud and kind of clumsy" to prove that Mr. Morris was an "unruly, erratic, intoxicated, and dangerous male passenger." See (DE# 126). This mere speculation or conjecture is not sufficient to create a genuine issue of material fact sufficient to defeat this well-supported motion for summary judgement. Additionally, as this Court has already ruled, the instant case deals with a "crowded dance floor" and it would be "speculative" and rather difficult to tell whether Mr. Morris was "stumbling, not keeping his balance well, and not keeping proper distance with his fellow passengers" because of the many passengers constantly moving around. "If any one passenger were 'stumbling, not keeping [his or her] balance well, and not keeping proper distance with . . . fellow passengers,' it would have been difficult to tell given the number of passengers on the dance floor and their constant movement." (DE# 66, p. 14). Plaintiff has not shown that there is record evidence creating a genuine issue of material fact. Rather, Plaintiff offers mere speculation or conjecture, which is not sufficient to create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *Yusko*,

424 F. Supp. 3d. at 1236 (*citing Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). Accordingly, summary judgment is warranted.

WHERFORE, Defendant respectfully requests this Court find that Plaintiff has not met her burden to establish facts within the record to support essential elements of her negligence claims and grant Defendant's Motion for Summary Judgment.

Dated: February 23, 2021

      /s/    Juan C. Perez, Jr.
**David J. Horr**
Florida Bar No.: 310761
dhorr@admiral-law.com
**Juan C. Perez, Jr.**
Florida Bar No.: 91581
jperez@admiral-law.com
HORR, NOVAK & SKIPP, P.A.
Two Datran Center, Suite 1700
9130 South Dadeland Boulevard
Miami, FL  33156
Telephone: (305) 670-2525
Facsimile:  (305) 670-2526
***Attorneys for Defendant, Royal Caribbean***

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on February 23, 2021, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  We also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

      /s/    *Juan C. Perez, Jr.*
**David J. Horr**
Florida Bar No.: 310761
dhorr@admiral-law.com
**Juan C. Perez, Jr.**
Florida Bar No.: 91581

jperez@admiral-law.com
*Attorneys for Defendant, Royal Caribbean*

3382/1737636

## SERVICE LIST

**Spencer Marc Aronfeld**
Florida Bar No.: 905161
**Abby Hernandez Ivey**
Florida Bar No.: 1002774
ARONFELD TRIAL LAWYERS
1 Alhambra Plaza, Penthouse
Coral Gables, FL  33134
Telephone: (305) 441-0440
Facsimile:  (305) 441-0198
*Attorneys for Plaintiff, Deborah Reed*

**David J. Horr**
Florida Bar No.: 310761
dhorr@admiral-law.com
**Juan C. Perez, Jr.**
Florida Bar No.: 91581
jperez@admiral-law.com
HORR, NOVAK & SKIPP, P.A.
Two Datran Center, Suite 1700
9130 South Dadeland Boulevard
Miami, FL  33156
Telephone: (305) 670-2525
Facsimile:  (305) 670-2526
*Attorneys for Defendant, Royal Caribbean*